# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| DAMEON WELLINGTON, | |
| Petitioner, | Case No. 1:11-cv-00008-REB |
| vs. | |
| CAROLYN COLVIN, Commissioner of Social Security, | **MEMORANDUM DECISION AND ORDER** |
| Respondent. | |

Pending before the Court is Petitioner Dameon Wellington's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny him disability benefits.  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

Petitioner Dameon Wellington ("Claimant" or "Petitioner") received Social Security Disability benefits pursuant to a claim granted on March 14, 2003.  AR 217. He remained on benefits until his incarceration in 2005.

After he was released, he protectively filed for Supplemental Security Income benefits on February 12, 2007.  AR 216.  Petitioner alleged he became disabled in June

2001 due to back pain, bowel issues, and a learning disability. AR 43, 221. His claim was denied initially on May 16, 2007 and, again on reconsideration, on October 17, 2007. AR 12.

Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). ALJ Michael Kilroy held a hearing in Boise, Idaho, on May 12, 2009. AR 12. The ALJ issued an unfavorable decision on October 19, 2009. AR 9–21. On December 14, 2009, Petitioner requested Appeals Council review of the ALJ's decision. AR 8. On November 17, 2010, the Appeals Council denied that request for review. AR 1–4.

Having exhausted his administrative remedies, Petitioner timely filed a petition for review with this Court. The parties filed a motion asking the Court to remand the case to the Commissioner for further action by the Commissioner and to retain jurisdiction over the action pending further administrative development of the record. *See Melkonyan v. Sullivan*, 501 U.S. 89, 101 n.2 (1991); *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993). On April 15, 2011, this Court issued an order of remand.

ALJ Michael Kilroy presided over a second hearing on May 1, 2012, at which Petitioner, represented by attorney Jacob Bernhardt, appeared and testified. AR 662. Also testifying were James Bruce, a medical expert, and Karen Black, an impartial vocational expert. *Id.* On August 13, 2012, the ALJ issued a second decision, again denying Petitioner's claims and finding that Petitioner was not disabled within the meaning of the Social Security Act. AR 662–72.

At the time of his first hearing before the ALJ, Petitioner was 33 years old; he was 36 years old at second hearing. He had work experience as a cabinet maker, car rental clerk, cashier, and general carpenter. AR 670.

On October 17, 2012, Petitioner moved to have this case reopened for review. Dkt. 14. The Court reopened the case on November 19, 2012. The updated administrative record was filed in March of 2013 and updated briefing followed. Petitioner argues the ALJ erred by (1) failing to give proper weight to an opinion provided by Michael Eastman, a physician's assistant assisting in Petitioner's medical care, (2) to support his credibility determination, and (3) to properly consider the impact of Petitioner's gastritis and recurrent abdominal pain in formulating the residual functional capacity. (Dkt. 28).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not

engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that

Petitioner had not engaged in substantial gainful activity since he applied for disability

benefits.  AR 664.

The second step requires the ALJ to determine whether the claimant has a

medically determinable impairment, or combination of impairments, that is severe and

meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An

impairment or combination of impairments is "severe" within the meaning of the Social

Security Act if it significantly limits an individual's ability to perform basic work

activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of

impairments is "not severe" when medical and other evidence establish only a slight

abnormality or a combination of slight abnormalities that would have no more than a

minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the

claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here,

the ALJ found that Petitioner had the following severe impairments: status-post lumbar

fusion at L4-S1; minimal degenerative changes at L2-L4; thoracic degenerative disc

disease; attention deficit disorder; and gastritis.  AR 664.

The third step requires the ALJ to determine the medical severity of any

impairments; that is, whether the claimant's impairments meet or equal a listed

impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered

**MEMORANDUM DECISION AND ORDER - 6**

disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment. AR 664.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner is unable to perform any past relevant work. AR 670. The ALJ determined that Petitioner could perform sedentary work, defined in 20 C.F.R. §416.967(a). AR 666. However, Petitioner could only walk up to 15 minutes at a time, sit up to 2 hours at a time, and stand up to 1.5 hours at a time. He must be able to alternate between these positions throughout the workday. He could only occasionally balance, stoop,4 kneel, crouch, crawl, and climb stairs. He could never climb ladders,

and must avoid concentrated exposure to cold and vibrations. And, Petitioner was limited to simple, routine, repetitive tasks requiring only occasional new learning, and limited focus or stress. *Id.*

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ considered Petitioner's age, education, work experience, and residual functional capacity and determined that there are jobs existing in significant numbers in the national economy that Petitioner can perform. AR 671.

**B.     Analysis**

Petitioner asserts three points of error.  (Dkt. 28).  The Court will first address the ALJ's credibility determination because it impacts the other issues.

1.     <u>The ALJ adequately supported his credibility determination</u>.

The ALJ found that Petitioner's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but that his statements concerning the intensity, persistence, and the limiting effects of his symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment ("RFC").  AR 666–67.  Because there is no evidence of malingering, and Petitioner produced objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of pain or other symptoms, the ALJ may reject the claimant's testimony about the severity of the alleged pain or other symptoms only by providing specific, clear and convincing reasons.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Here, the ALJ found Petitioner's allegations were not entirely credible because, among other things, (1) the medical evidence contradicted his alleged limitations; (2) Petitioner's statements to medical providers were at times inconsistent with his allegations; and (3) his treatment regimen was effective in mitigating his pain.  AR 667–69.  The ALJ also discussed Petitioner's daily activities and how they varied from his claimed limitations.  *See* AR 665, 669.

a.      *Daily Activities*

First, to the extent the ALJ relied on inconsistencies between Petitioner's reported pain and limitations and his daily and other activities, the ALJ's interpretation of the evidence is supported by the record.  The ALJ found:  "In activities of daily living, the claimant has no restriction.  For instance, he prepared meals, ran errands for his mother, cared for his two young daughters, performed household chores, used a computer, and helped his children with their homework."  AR 665.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

The ALJ's finding is supported by the report of Dr. James Read on October 11, 2007.  AR 438–44.  In that report Dr. Read noted that Petitioner had full custody of and was raising his two daughters, ages seven and eight, on his own.  AR 440.  He lives with his mother, who has cancer, and "he is helping her or vice versa".  *Id.*  Petitioner reported to Dr. Read that he has a regular routine that includes preparing art projects and homework for his daughters; he can do household chores, but has to be careful; he can cook, but cannot stand very long; and he runs errands for his mother.  AR 441.

Additionally, the ALJ noted that Petitioner had a successful camping trip with his family.  *See* AR 669 (Petitioner's "pain level was so much improved that he was going camping with his family."; Petitioner "claimed that his camping trip went well and his

pain medications were controlling his symptoms better than ever.").  Although

Petitioner's report of camping was limited to one trip in a friend's recreational vehicle, he

reported that the trip went well.  AR 85–86; 780.  That trip, coupled with the other

activities of daily living, even though some of these activities are qualified by Petitioner's

statements of related limitations, support the ALJ's credibility determination nonetheless.

Moreover, the ALJ incorporated some limitations in the RFC regarding how long

the Petitioner could walk, sit, and stand, as well as provided that Petitioner needs to

alternate between positions to complete and eight hour workday.  *See* AR 669 (explaining

that Petitioner's "activity level supported the limitations contained in the residual

functional capacity assessment"); AR 666 (RFC describing additional limitations to

sedentary work).  Thus, the ALJ took into account some of the limitations reported, and

did not completely ignore Petitioner's claimed limitations, but simply declined to give

them the full credit Petitioner sought.

*(b)     Medical Record and Pain Treatment*

Second, the ALJ appropriately interpreted the medical evidence.  Petitioner's

primary argument related to the ALJ's credibility determination focuses on the ALJ's

alleged failure "to understand the basic nature of the failed back syndrome" and that the

ALJ appeared to "rely heavily on the failure of the imaging studies performed to show a

clear source for Petitioner's pain."  Pet.'s Br., p. 17 (Dkt. 26) (citing AR 667–70).

Petitioner is correct that the ALJ relied on CT scans from October of 2010, in

which "only mild abnormalities were observed", and July 2012 imaging scans showing

"no impingement and no further degenerative changes" in Petitioner's spine, as evidence that Mr. Wellington's "spine remained stable for many years and was not causing disabling pain." AR 669. However, his type of objective medical evidence provides relevant information and appropriate support for the ALJ's decision.[1]

Additionally, the ALJ did not find that Petitioner experienced *no pain*, but rather that the objective medical evidence, along with Petitioner's daily activities and reports of success in managing his pain with medications, indicated that Petitioner's pain is not *disabling*. *See* AR 669 (explaining that "because only mild abnormalities" were observed, Petitioner's "allegations concerning severe, persistent, and disabling back pain" were not supported; noting imaging studies showed that Petitioner's spine "remained stable for many years and was not causing disabling pain"; noting that Petitioner's "subjective reports of pain seem inconsistent with his reports concerning improvements in such pain").

Petitioner does not argue that the ALJ's discussion of what the objective medical evidence revealed is incorrect, but rather that the ALJ incorrectly relied on that evidence to determine that Petitioner's pain is not as debilitating as he claimed. The ALJ correctly summarized the medical imaging test results. *See, e.g.*, AR 934–40. Further, to the extent

---

[1] While a claimant's subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). And, the objective medical evidence is not the only basis for the ALJ's credibility determination in this case.

**MEMORANDUM DECISION AND ORDER - 12**

he relied on them in conjunction with other evidence[2] (such as Petitioner's pain management) to determine that Petitioner's pain was not as limiting as Petitioner claimed, the ALJ appropriately considered the medical evidence of record.

In making his credibility determination, the ALJ also considered Petitioner's reports that his medication helped control his pain. *See* AR 667–68; *see, e.g.*, AR 554 ("over all doing well" and "not taking anything for break-through medication"); AR 555 ("He is doing great. He is interested in spinal cord stimulation but doesn't want to pursue that right away because the medications are working so well."). The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(iv)-(v). *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding a claimant's favorable response to conservative treatment, such as physical therapy and anti-inflammatory medication, undermines a claimant's complaints of disabling pain).

In addition to Petitioner's reports that his pain had improved with various medications, Petitioner at times declined to pursue other forms of treatment because his medication was working. *See, e.g.*, AR 555. The record also contains numerous reports of only mild to moderate pain. *See* AR 401, 541, 543, 555. Although the record also contains reports of higher pain, *see, e.g.*, AR 397, 578, 611, the ALJ appropriately

---

[2] Petitioner's treating sources reported other findings that support the ALJ's decision, such as intact gait; full range of motion; no muscle weakness; no acute distress; the ability to squat, heel walk, and toe walk; and negative straight leg raises. *See e.g.*, AR 407, 412.

interpreted the conflicting evidence to find that Petitioner's "reports of pain were not as persistent or severe as alleged," and "his subjective reports of pain seem inconsistent with his reports concerning improvements in such pain."[3] AR 669. Thus, the ALJ did not find that Petitioner had no pain, just that it was not as persistent or severe as alleged, and did not preclude a limited range of sedentary work. The ALJ's reliance on the pain treatment records provide substantial evidence to support his credibility determination.

Petitioner also notes that the ALJ placed too much emphasis on Petitioner's inability to see a surgeon until July 2012—when Petitioner had requested the referral in March of 2011—as evidence that Petitioner's pain was not as severe as alleged. AR 670. The ALJ "note[d]" at the end of his discussion regarding Petitioner's RFC, that Petitioner "complained of disabling thoracic spinal pain beginning in March of 2011," but "failed to rigorously pursue his referral to a surgeon, and did not see one until July 2012." AR 670.

Petitioner argues that there is no evidence to support the ALJ's view that the delay was due to a "fail[ure] to rigorously pursue" the referral. Although it is accurate that the initial delay was due to a surgeon who could not accept Petitioner's insurance, *see* AR 760, another consultation was "rescheduled" (from July 2011 to October 2011) for

---

[3] Petitioner also noted that Dr. Read, an examining psychologist, reported that Petitioner was in pain during the examination and opined that it "would be very hard for [Petitioner] to obtain any kind of employment." Pet.'s Reply, p. 4 (Dkt. 28) (citing AR 443). However, although Dr. Read's comments about Petitioner seemingly being in pain support Petitioner's claims of pain, the ALJ appropriately considered that Dr. Read's observations were from a one-time visit, Petitioner's records demonstrate subsequent improvement in pain management, and Dr. Read's opinion went beyond his expertise in psychiatry. AR 668.

reasons not specified in the record.  AR 754; *see also* AR 758.  A new referral then had to

be issued and Petitioner appeared to have waited for the surgeon's office to contact him,

instead of trying to contact the surgeon himself.  AR 751.  Although the delay appears to

have been caused partly by insurance issues and the surgeon's schedule, the ALJ

considered the delay to be an indication that Petitioner did not follow up to a degree that

would be expected if his pain was as severe as alleged.  *See* AR 748 (noting: "[t]he

patient was not contacting Dr. Zimmerman's office, [and] the referral ran out").

Although subject to differing interpretations, the ALJ did not err in relying on the

delay in seeking surgery as an indication that Petitioner's pain was not as disabling as

alleged.  *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989) (explaining that an ALJ

may rely upon a claimant's "unexplained, or inadequately explained, failure to seek

treatment or follow a prescribed course of treatment" to discredit alleged symptoms).

Even if this does not amount to a clear and convincing reason to support the ALJ's

credibility determination, other sufficiently supported reasons bolster the ALJ's

determination, as set for the above.  Accordingly, any error is harmless.  *See Carmickle v.*

*Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there

remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the

error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is

deemed harmless and does not warrant reversal.") (citations and quotation marks

omitted).

**MEMORANDUM DECISION AND ORDER - 15**

For all of these reasons, the ALJ's credibility determination is supported by the requisite clear and convincing reasons. Thus, the Court must uphold that determination even if there is evidence in the record supporting Petitioner's claimed limitations.

      2.      <u>The ALJ supported his decision to give no weight to the medical opinion of Michael Eastman, PA</u>.

Michael Eastman is a physician's assistant assisting in Petitioner's medical care at the Saint Alphonsus Pain Management Center. AR 412. Petitioner also received care at the pain center from Daniel Marsh, MD, and a nurse practitioner. Eastman submitted a medical source statement opining that Petitioner's back pain is so severe he would be limited to less than sedentary work and would miss more than four workdays per month due to pain. AR 887–88.

The ALJ gave "no weight" to "[t]his statement" because Eastman is a "non-acceptable medical source under [the] rules"; the treatment notes show that Petitioner's back pain and leg numbness was well-controlled with medication, and the pain was so well controlled in June of 2010 that Petitioner was camping and remaining active; and Eastman relied "heavily" on Petitioner's subjective pain reports.[4] AR 670. The Court discussed *supra* the treatment records, including those from Eastman, and Petitioner's activities of daily living, and found the ALJ appropriately relied on Petitioner's activities and his reports about improving, and controlled, pain in making the credibility

---

      [4] Petitioner agrees that the record evidences a "lack of examinations" conducted *by* Eastman (even though he had access to notes from Dr. Marsh's examinations). Pet.'s Br., p.15 (Dkt. 26).

assessment. For the same reasons, that evidence and the ALJ's credibility determination support the ALJ's treatment of Eastman's medical opinion statement.[5]

Additionally, the ALJ appropriately treated Eastman as an "other source" and did not error in giving no weight to his medical opinion. "Physician's assistants are defined as 'other sources,' and are not entitled to the same deference." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations and internal quotation marks omitted). "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (internal quotation marks omitted)).

Plaintiff cites to *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996), for his argument that a physician assistant who works in conjunction with a physician constitutes an acceptable medical source. In *Gomez*, the Ninth Circuit determined that a nurse practitioner's opinion "was properly considered *as part of the opinion* of [the treating physician the NP worked with], [who was] an acceptable medical source," because the NP "consulted with" the treating physician regarding the claimant's treatment "numerous

---

[5] In short, the reasons provided by the ALJ for rejecting Eastman's opinion are based on substantial evidence.

times.'"[6] *Id.* at 971. However, as described by several district courts in the Ninth Circuit,

the regulation relied on to reach this result in *Gomez* was amended in 2000:

> The subsection of the regulation [20 C.F.R. § 416.913(a)(6)] which was the basis of the *Gomez* [holding] regarding nurse practitioners as acceptable medical sources when part of an interdisciplinary team was deleted by amendment in 2000. 65 Fed.Reg. 34950, 34952 (June 1, 2000). Under current regulations, physician assistants qualify only as an "other source" to be considered. 20 C.F.R. §§ 404.1513(d), 416.913(d). There is no [longer a] provision for a physician assistant to become an acceptable medical source when supervised by a physician or as part of an interdisciplinary team.

*Olney v. Colvin*, No. 12–CV–0547–TOR, 2013 WL 4525402, *4 (E.D.Wash. Aug. 27,

2013). *See also Farnacio v. Astrue*, 11–CV–0065–JPH, 2012 WL 4045216, *6,

(E.D.Wash. Sept. 12, 2012); *Hudson v. Astrue*, 11–CV–0025–CI, 2012 WL 5328786 at

*4 n. 4, (E.D.Wash. Oct. 29, 2012).[7]

---

[6] Setting aside the issue of whether the *Gomez* rationale still applies in light of the regulation change discussed elsewhere in this section, there are some factual differences between this case and *Gomez*, including that Petitioner here cites to only one instance in which Eastman "reviewed" Petitioner's case with Dr. Marsh, AR 775, and that Eastman's opinion was not offered "as part of the opinion" of Dr. Marsh, but as his own opinion, without a similar opinion statement in the record from Dr. Marsh. *See* AR 668 (noting that Dr. Marsh, the treating physician, "never opined that the claimant's pain was disabling, and his treatment notes did not provide evidence of such"). *Compare Gomez v. Chater*, 74 F.3d at 971. *See also, e.g.*, *Bond v. Colvin*, No. 2:13–cv–127–EFB, 2014 WL 1125291, *3 (E.D.Cal. Mar. 20, 2014) (considering physician's assistant as an "other source"); *Mack v. Astrue*, 918 F.Supp.2d 975, 983 (N.D.Cal. 2013) (declining to treat a licensed clinical social worker as an acceptable medical source because her opinion report was prepared and signed *only* by her and the record did not establish a close agency relationship with an acceptable medical source).

[7] *Molina* expressly left open the issue of *Gomez's* "continued vitality", noting that a physician's assistant does "not qualify as a medically acceptable treating source" but then citing to *Gomez* and considering that the physician assistant's opinion in that case

Although the Court recognizes that there are good reasons for recognizing the opinion of a physician's assistant who provides regular treatment to a patient, the regulations at this time do not *require* an ALJ to treat a physician assistant's medical opinion the same as that of a treating physician. Accordingly, the ALJ did not error in declining to consider Eastman's medical opinion, and he provided the required "germane" reasons to support his treatment of Eastman's opinion.

Finally, although the ALJ gave "no weight" to Eastman's *opinion*, he did consider the medical records from Petitioner's visits to Eastman and the pain center. *See* AR 669 (noting that Petitioner was "treated primarily by Mr. Michael Eastman" between 2009 and 2012; citing to several treatment notes made by Eastman[8]). Thus, the ALJ did not entirely ignore Eastman's treatment history and medical records, he simply accorded no weight to Eastman's medical opinion, based on the regulations. The Court finds no error in the ALJ's determination that he should give no weight to Eastman's other source opinion.

---

did not qualify as an acceptable treating source because "the record does not show that she worked under a physician's close supervision". F.3d at 1111 & 1112 n.3. Nonetheless, the Court finds persuasive the district court decisions that have declined to follow *Gomez* because of the change in the language used in the regulation on which the *Gomez* court relied.

[8] The ALJ cited to these records by exhibit number and page, *e.g.*, "B27F/39"; the records the ALJ cites to are at AR 776–85.

3.      The ALJ considered the impacts of Petitioner's gastritis and abdominal pain in assessing Petitioner's residual functional capacity.

Petitioner's final argument is that the ALJ failed to properly consider the impact of Petitioner's gastritis and recurrent abdominal pain in formulating the residual functional capacity.  The ALJ considered that Petitioner "had hospitalizations concerning abdominal pain", AR 669, found these abdominal conditions to be severe, AR 664, and included several limitations in his RFC based on the combination of Petitioner's conditions and his limitations, AR 664.[9]  Petitioner has not described additional limitations related solely to these conditions, or demonstrated how the ALJ's assessment failed to account for these conditions and the resulting limitations.  Accordingly, the Court finds no error in the ALJ's treatment of these conditions.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) ("The ALJ concluded at Step 2 that [the claimant's impairments] were severe, and the RFC includes several physical limitations. [Claimant] does not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC.").

---

[9]  The ALJ also noted that Petitioner's abdominal pain "as relieved with treatment."  AR  669.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

There are no doubt considerable difficulties facing Petitioner in raising his two daughters with only the help of his mother who is suffering from cancer and managing with pain that, although the ALJ found is not disabling, is present.  However, evidence upon which the ALJ relied can reasonably and rationally support his conclusions with respect to most of the issues, despite the fact that such evidence may be susceptible to a different interpretation.  Indeed, in this case, this Court might well have found differently if was to decide the case *de novo*, but the Court's review is drawn from a cold record, and it is not this Court's role to alter the ALJ's decision without some appropriate basis under the law for doing so, consistent with its role as a reviewing court only.  Here, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence.  Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED:  **March 31, 2014**.

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge